1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   MANUEL RODRIGUEZ,                        Case No.  1:21-cv-00572-NONE-EPG

12                Plaintiff,

13        v.                                  FINDINGS AND RECOMMENDATIONS
                                              RECOMMENDING THAT DEFENDANTS'
14   CHRISTIAN PFEIFFER, et al.,              MOTION TO DISMISS BE GRANTED AND
                                              THAT PLAINTIFF BE GRANTED LEAVE
15                Defendants.                 TO AMEND THE COMPLAINT

16                                            (ECF No. 9)

17                                            OBJECTIONS, IF ANY, DUE WITHIN
                                              FOURTEEN DAYS
18

19        I.      BACKGROUND

20        Plaintiff Manuel Rodriguez ("Plaintiff"), proceeding through counsel, filed this action

21   pursuant to 42 U.S.C. § 1983 on April 5, 2021, alleging claims against Defendants Christian

22   Pfeiffer, Michael Felder, Harpreet Singh R.N., E. Vito, L.V.N., Lawrence Aflague R.N.R., and

23   Does 1 through 10 for deliberate indifference to Plaintiff's serious medical needs in violation of

24   the Eighth Amendment. (ECF No. 1.)

25        On June 14, 2021, Defendants Pfeiffer, Felder, and Vitto[1] filed a motion to dismiss the

26   complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 9.) Plaintiff filed an

27   opposition on June 30, 2021. (ECF No. 15.) Defendants Pfeiffer, Felder, and Vitto filed a reply on

28   _____

[1] Defendants Singh and Alague did not join in the motion.

1

July 9, 2021. (ECF No. 16.)

For the following reasons, the Court recommends that Defendants' motion to dismiss be granted and that Plaintiff be granted leave to amend the complaint.

**II.      PLAINTIFF'S COMPLAINT**

The complaint's relevant factual allegations, which are accepted as true for the purposes of this motion, are as follows:

Plaintiff is an incarcerated and convicted prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). (ECF No. 1 at 2.) Plaintiff is currently incarcerated at the California Health Care Facility in Stockton, California. (*Id.*)

Defendant Pfeiffer is the Acting Warden at Kern Valley State Prison ("KVSP"). (ECF No. 1 at 2.) Defendant Felder is the CEO of KVSP and "in that position had overall charge with the provision of medical care at KVSP." (*Id.*) Defendants Singh, Vito, and Aflague are healthcare workers licensed in California to practice nursing or other ancillary healthcare. (*Id.*)[2]

Defendants Pfeiffer and Felder oversee the provision of healthcare at KVSP and ensure that it provides adequate healthcare to those inmates with serious medical needs. (ECF No. 1 at 3.) Defendants are responsible for providing adequate medical care for the inmates at KVSP under State, Federal, and constitutional law. (*Id.*) Defendants Pfeiffer and Felder knew that incarcerated prisoners were totally dependent on Defendants for medical care and, if Defendants did not act according to law, inmates such as Plaintiff would be unable to receive prompt and appropriate medical care. (*Id.*) Defendants were also responsible for providing security and custodial supervision to inmates. (*Id.*) They were responsible for monitoring sick or ill inmates to determine which had serious medical needs requiring response. (*Id.*)

In May of 2019, while Plaintiff was incarcerated at KVSP, Plaintiff suffered a neck injury. (ECF No. 1 at 3.) In June and July of 2019, he complained of neck pain and suffered progressive pain and disability. (*Id.*) When Plaintiff requested to be seen by medical staff, he was seen by nursing staff who did not have the training, experience, or knowledge to make a diagnosis, properly evaluate the injury, or recommend diagnostic tests, and they did not make a referral to a medical doctor. (*Id.*) From the date of his injury to July 9, 2019, Plaintiff was not seen by a

---

[2] Plaintiff also alleges Does 1 through 10 were employed at KVSP in various positions. (ECF No. 1 at 2.)

medical doctor. (*Id.*) Plaintiff was seen on July 9, 2019 because he had collapsed, was not able to ambulate, and suffered sensory changes. (*Id.* at 3-4.) Because of Defendants' delay, Plaintiff "suffered catastrophic consequences of the injury which he had sustained in May, 2019." (*Id.* at 4.)

On June 6, 2019, Plaintiff requested to see Health Care Medical because his shoulder and neck were injured. (ECF No. 1 at 4.) Plaintiff was not allowed to be seen by a doctor at that time. (*Id.*) Defendant Doe 1, a nurse, told Plaintiff that there was nothing that could be done because it was a pinched nerve and the only way that Plaintiff would be seen by a doctor was if his pain was getting worse. (*Id.*) The only care that was provided to Plaintiff consisted of Ibuprofen and a worksheet with exercises for his shoulder. (*Id.*) This opinion was seconded by David Rohrdanz M.D., who was consulted with by nursing staff from KVSP but did not see or evaluate Plaintiff. (*Id.*) Even though Dr. Rohrdanz did not see, speak to, or examine Plaintiff, he seconded the opinion of nursing and indicated that the health care staff at KVSP was encouraged to ignore or delay necessary medical diagnosis and treatment. (*Id.*)

By July 1, 2019, Plaintiff's pain was getting substantially worse but neither nursing, medical, or any other type of health care would provide care and treatment. (ECF No. 1 at 4.) Plaintiff walked in to the Health Care Office but the office would only provide a Health Care Request Form to refill his Ibuprofen. (*Id.*)

On or about July 4, 2019, Plaintiff experienced pain that affected his ability to move and sleep. (ECF No. 1 at 4.) Plaintiff was in so much pain and discomfort that he went "mandown" and custodial staff contacted the Health Care Office at KVSP. (*Id.*) Plaintiff was seen by Defendant Singh, a nurse. (*Id.*) Plaintiff advised Defendant Singh of the incident, the progression of pain thereafter, that his pain was a "10/10," and that the pain had progressed so that Plaintiff's chest hurt. (*Id.* at 4-5.) Defendant Singh documented Plaintiff's complaints and discounted them because he had a subjective animosity towards Plaintiff and a preconceived opinion that all inmates including Plaintiff were not providing true and accurate accounts of pain and their present physical condition. (*Id.* at 5.) Defendant Singh's examination of Plaintiff was cursory and performed with the predetermined opinion that all inmates including Plaintiff were falsifying their complaints to seek pain medication and were "drug seeking." (*Id.*) Defendant Singh refused to

allow Plaintiff to see a doctor and gave him Ibuprofen. (*Id.*)

On July 8, 2019, Plaintiff was seen by Defendant Aflague. (ECF No. 1 at 5.) Plaintiff advised Defendant Aflague of his history and that he had progressively worsening neck pain, numbness, tingling, and weakness down his right hand and arm. (*Id.*) Once again, Defendant Aflague failed to perform an examination or summon a doctor even though Defendant Aflague did not have the knowledge, training, education, or experience to competently evaluate those signs and symptoms. (*Id.*) Defendant Aflague instead told Plaintiff that he would be seen by a doctor in two or three weeks. (*Id.*) Even though Plaintiff told Defendant Aflague that the pain was unbearable, Defendant Aflague ignored his symptoms and Plaintiff was sent back to his cell. (*Id.*)

On July 9, 2019, Plaintiff attempted to ambulate to his education classes. (ECF No. 1 at 5.) Because he was in severe pain, Plaintiff was sent back to his cell. (*Id.*) As Plaintiff was walking back to his cell, his legs collapsed. (*Id.*) Custodial officers who observed Plaintiff summoned medical personnel by alarm and Plaintiff was taken to medical. (*Id.*) At medical, Does 1-3 once again stated that Plaintiff was falsifying his symptoms and attempted to send him back to his cell. (*Id.*) At this time, Plaintiff had a sensory deficit below his chest at the thoracic T8/9 level. (*Id.* at 5-6.)

Plaintiff was finally seen by a doctor on July 9, 2019, over two hours after custodial officers sounded the alarm. (*Id.* at 6.) This was the first time that Plaintiff was seen by a medical doctor for his injury. (ECF No. 1 at 6.) At that examination, which was performed at approximately 1940 hours, it was determined that Plaintiff had a sensory deficit below T8/9 where he could not feel anything, even strong pinches. (*Id.*) It was also determined at that time that Plaintiff's reflexes in his lower legs were abnormal and that his toes were in an equinus position. (*Id.*) The medical doctor made orders to transfer Plaintiff to an outside health care facility to rule out an epidural abscess and for examination, diagnosis, and definitive care. (*Id.*)

Plaintiff was subsequently diagnosed with an epidural abscess. (ECF No. 1 at 6.) An epidural abscess is an infection that forms in the central nervous system. (*Id.*) Abscesses that are enclosed in the bony confines of the spinal column can expand to compress the spinal cord and cause severe symptoms, including paralysis or death. (*Id.*) Prompt diagnoses and treatment of the condition are imperative to avert complications. (*Id.*) If there is prompt diagnoses and treatment

by aspiration or drainage of the abscess, a cure can be achieved. (*Id.*) Time is of the essence and prompt examination by a qualified healthcare provider followed by prompt diagnosis and treatment is required to avert disastrous consequences. (*Id.*) In Plaintiff's case, the epidural abscess was a result of Plaintiff's neck injury in May of 2019. (*Id.*)

Plaintiff was taken to a healthcare facility outside KVSP where he was admitted, diagnosed with an epidural abscess, and operated upon. (ECF No. 1 at 6.) However, because of Defendants' delay in diagnosis and treatment, which was avoidable, the epidural abscess caused severe, catastrophic, and disabling damage to Plaintiff's spine, rendering him quadriplegic and dependent on others for all of his activities of daily living. (*Id.* at 6-7.)

Defendants each acted with deliberate indifference to Plaintiff's medical condition. (ECF No. 1 at 7.) There was a culture at KVSP, tolerated and ratified by Defendants Pfeiffer and Felder, that all prisoners would be viewed as persons who were seeking pain medications not for therapeutic purposes but for illicit and/or recreational purposes. (*Id.*) That culture resulted in all prisoners being viewed as liars when complaining of pain. (*Id.*) If pain medication was dispensed, it was essentially over the counter pain medication, no matter the inmate's presentation. (*Id.*) This custom and practice had the net effect of denying medical care to persons with serious medical needs. (*Id.*)

Defendants were each aware that the KVSP medical staff was primarily made up of nursing staff who act as the gatekeepers for inmates to be seen my medical doctors. (ECF No. 1 at 7.) The KVSP nursing staff was not qualified by education, training, or state licensing to act in this position. (*Id.*) This was a deliberate policy to minimize the participation of medical doctors in the care and treatment of inmates to minimize the cost of medical care. (*Id.*)

Plaintiff was not seen by a medical doctor for more than one month after he first sought examination and treatment for his neck injury, and that only occurred on July 9, 2019, because of his collapse. (ECF No. 1 at 7.) The delay was caused by Defendants' deliberate indifference to a serious medical need. (*Id.*) Defendants each had reason to know that Plaintiff had a serious medical need because, as time progressed, his symptoms were getting worse and gave all indication of having nervous system involvement. (*Id.* at 7-8.) Defendants' practice was to minimize symptoms and complaints and to provide over the counter medication as a panacea for

5

most, if not all, physical complaints. (*Id.* at 8.) Had Plaintiff been sent immediately for definitive diagnosis when he originally voiced physical complaints and sought treatment, Plaintiff would have more probably than not had a definitive treatment and cure of the epidural abscess. (*Id.*) However, Defendants' delay caused by their deliberate indifference and conscious disregard was a substantial factor in the severity of Plaintiff's now permanent condition of quadriplegia. (*Id.*) The deliberate indifference was the result of Defendants' subjective belief that all inmates, including Plaintiff, were "drug seeking" and falsifying their symptoms, as well as the custom and practice to minimize the costs of inmate medical care. (*Id.*)

Plaintiff brings a claim under 42 U.S.C. § 1983 for violation of his Eighth Amendment rights. (ECF No. 1 at 8-11.) Plaintiff alleges that Defendants Pfeiffer and Felder created, maintained, and promoted a system of rendition of medical care where the primary healthcare providers would be nursing and other ancillary healthcare staff who did not have the expertise or knowledge to diagnose and treat patients. (*Id.* at 10.) "There was an administrative mandate set forth by custom and practice" that the KVSP nursing and ancillary staff would be primary healthcare providers and that inmates would be actively prevented from being treated by medical doctors. (*Id.*) There was also a mindset, which Defendants Pfeiffer and Felder encouraged and tolerated, that these "primary healthcare providers" would deny treatment and care and examination by medical doctors and would consider any inmate requesting treatment for pain or pain medication as being "drug seeking" and providing only over the counter pain medication, no matter the inmate's presentation. (*Id.*)

Additionally, each of the Defendant health care providers knew that Plaintiff had sustained a neck injury and knew that over the period of time his symptoms were getting worse. (ECF No. 1 at 10.) These defendants knew that Plaintiff's symptoms were neurologically related and Plaintiff had a serious medical need. (*Id.*) Regardless, they failed and refused to refer Plaintiff to a medical doctor for examination, diagnosis, and treatment. (*Id.*)

### III.   DEFENDANTS' MOTION TO DISMISS

#### a.  Defendants' Position

The motion argues that Defendants Pfeiffer and Felder are immune from suit under the Eleventh Amendment because they are being sued solely in their official capacities. (ECF No. 9-1

at 4-5.) Additionally, the factual allegations are insufficient to state a claim against them for deliberate indifference. (*Id.* at 7-8.) Further, other than alleging Defendant Vitto's occupation, the complaint does not contain any factual allegations against Defendant Vitto. (*Id.* at 8-9.)

### b. Plaintiff's Position

In his opposition, Plaintiff concedes that the complaint names Defendant Pfeiffer and Felder in their official capacities as Acting Warden and CEO of KVSP. (ECF No. 15 at 2.) However, Plaintiff argues that Eleventh Amendment immunity does not apply because Plaintiff is not only seeking to sue the state based on a state policy. (*Id.* at 3-6.) Additionally, while there are no specific allegations against Defendant Vitto, the allegations are sufficient to state a claim against him. (*Id.* at 7.) If the motion to dismiss is granted, Plaintiff requests leave to amend. (*Id.* at 7-8.)

## IV.   GENERAL LEGAL STANDARDS

### a. Motions to Dismiss

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Hosp. Bldg. Co. v. Rex Hosp. Trustees*, 425 U.S. 738, 740 (1976). The Court must also construe the alleged facts in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir.1994) (*per curiam*). All ambiguities or doubts must also be resolved in the plaintiff's favor. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). "While the Court cannot accept new facts alleged in opposition papers, a plaintiff's briefing may always be used to clarify allegations in a complaint." *Yordy v. Astrue*, 2010 WL 653099, at *2 (N.D. Cal. Feb. 22, 2010) (citing *Pegram v. Herdrich,* 530 U.S. 211, 230 (2000)).

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. *See Iqbal*, 556 U.S. at 679. The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

1  elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations and quotation

2  marks omitted).

3      After assuming the veracity of all well-pleaded factual allegations, the second step is for

4  the court to determine whether the complaint pleads "a claim to relief that is plausible on its

5  face." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). A claim is facially plausible

6  when the plaintiff "pleads factual content that allows the court to draw the reasonable inference

7  that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at

8  556). The standard for plausibility is not akin to a "probability requirement," but it requires "more

   than a sheer possibility that a defendant has acted unlawfully." *Id.*

9

10         **b. Section 1983**

11      The Civil Rights Act under which this action was filed provides:

12         Every person who, under color of any statute, ordinance, regulation,
           custom, or usage, of any State or Territory or the District of
13         Columbia, subjects, or causes to be subjected, any citizen of the
           United States or other person within the jurisdiction thereof to the
           deprivation of any rights, privileges, or immunities secured by the
14         Constitution and laws, shall be liable to the party injured in an action
           at law, suit in equity, or other proper proceeding for redress....

15  42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely

16  provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490

17  U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979*)); see also*

18  *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*,

19  697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012);

20  *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

21      To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under

22  color of state law, and (2) the defendant deprived him of rights secured by the Constitution or

23  federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh*

24  *v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state

25  law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he

26  does an affirmative act, participates in another's affirmative act, or omits to perform an act which

27  he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler*

28  *II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*,

588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

Additionally, a plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

### c.  Eighth Amendment Deliberate Indifference

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)) (citation and internal quotations marks omitted), *overruled on other grounds by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (*en banc*).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to

establish an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

## V.     DISCUSSION

### a.   Defendants Pfeiffer and Felder

#### i.   Eleventh Amendment Immunity

Defendants Pfeiffer and Felder first argue that they are entitled to Eleventh Amendment immunity because they are sued in their official capacities. (ECF Nos. 9-1 at 4-5, 16 at 1-2.) Plaintiff concedes that these defendants are named in their official capacities, but argues that Eleventh Amendment immunity does not apply because this case concerns the rendition of medical care at KVSP, and not CDCR's policies and procedures. (ECF No. 16 at 2-7.)

The Eleventh Amendment bars a plaintiff's claims for damages against the state, its agencies or its officials in their official capacities, unless the state waives its immunity. *Kentucky v. Graham,* 473 U.S. 159, 169 (1985); *see also Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989). Section 1983 does not abrogate the states' Eleventh Amendment immunity from suit. *See Quern v. Jordan,* 440 U.S. 332, 344–45 (1979).

When state officials are sued in their official-capacities, the suit is treated as against the state. *Kentucky v. Graham,* 473 U.S. 159, 166 (1985); *Doe v. Lawrence Livermore Nat'l Lab.,* 131 F.3d 836, 839 (9th Cir.1997); *see also Arizonas for Official English v. Arizona,* 520 U.S. 43, 69 n. 24 (1997) ("State officers in their official capacities, like States themselves, are not amenable to

suit for damages under § 1983."). "1983 claims against government officials in their official capacities are really suits against the governmental employer because the employer must pay any damages awarded." *Butler v. Elle,* 281 F.3d 1014, 1023 fn. 8 (9th Cir.2002). In such suits, the real party in interest is the entity for which the official works. *Hafer v. Melo,* 502 U.S. 21, 25 (1991). By contrast, "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions [taken] under color of state law." *Id.* at 165. "[T]he distinction between official capacity suits and personal-capacity suits is more than 'a mere pleading device.'" *Hafer,* 502 U.S. at 27 (quoting *Will,* 491 U.S. at 71).

Here, as Plaintiff concedes, the complaint names Defendants Pfeiffer and Felder in their official capacities and only seeks monetary relief.[3] (ECF No. 1 at 1, 12-13.) The real party in interest is therefore these defendants' employer, CDCR. Although Plaintiff argues that he is not seeking to sue the state based on state policy, because the compliant names Defendants Pfeiffer and Felder in their official capacities Plaintiff's claims must be treated as being brought against the state. State officers sued in their official capacities receive the same immunity as the government agency that employs them. Thus, the Court recommends that Plaintiff's claims against Defendants Pfeiffer and Felder be dismissed.

ii.   Supervisory Liability

Defendants Pfeiffer and Felder also argue that the factual allegations against them are insufficient to state a claim for deliberate indifference. (ECF No. 9-1 at 7-8.) As discussed above, the Court has found that these defendants are entitled to Eleventh Amendment immunity. However, because the Court also recommends granting leave to amend as discussed below, it will also address Defendants Pfeiffer and Felder's argument that the factual allegations fail to establish supervisory liability against them.

A plaintiff proceeding under § 1983 must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words,

---

[3] The Eleventh Amendment does not bar a declaratory or injunctive relief § 1983 claim against an official-capacity state officer for violations of a plaintiff's constitutional rights. *See Krainski v. Nevada ex rel. Bd. of Regents of Nev.,* 616 F.3d 963, 967–68 (9th Cir.2010) ("A narrow exception [to the Eleventh Amendment bar] exists where the relief sought is prospective in nature and is based on an ongoing violation of the plaintiff's federal constitutional or statutory rights." (internal quotations omitted)). However, the complaint does not seek declaratory or injunctive relief against Defendants Pfeiffer or Felder.

there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978). Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *Iqbal*, 556 U.S. at 676-77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978).

To state a claim for relief under § 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citations and internal quotation marks omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). For instance, a supervisor may be liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations, quotation marks, and alterations omitted).

Plaintiff does not allege that these defendants were personally involved in the alleged deliberate indifference. Therefore, he must allege either that these Defendants Pfeiffer and Felder knew of the constitutional violations and failed to act to prevent them, or that they promulgated or implemented a constitutionally deficient policy.  Plaintiff contends that the complaint adequately alleges that Defendants Pfeiffer and Felder were aware of and participated in 1) a culture of denying inmates care by considering pain complaints to be a sham and only for the purpose of obtaining medications for illicit or recreational purposes; and 2) a medical structure where nurses acted as gatekeepers for inmates to be seen by medical doctors in order to reduce costs. (ECF No. 15 at 6.)

12

Again, Plaintiff alleges that "There was an administrative mandate set forth by custom and practice" that the KVSP nursing and ancillary staff would be primary healthcare providers and that inmates would be actively prevented from being treated by medical doctors. (*Id.*) There was also a mindset, which Defendants Pfeiffer and Felder encouraged and tolerated, that these "primary healthcare providers" would deny treatment and care and examination by medical doctors and would consider any inmate requesting treatment for pain or pain medication as being "drug seeking" and providing only over the counter pain medication, no matter the inmate's presentation. (*Id.*)

The complaint's allegations regarding Defendants Pfeiffer and Felder's involvement in the alleged constitutional violations are conclusory and are not supported by sufficient factual detail. Plaintiff does not allege any facts supporting that there is such a policy, such as a document stating a policy or a statement by a medical professional referring to such a policy, informal or otherwise.  Plaintiff does not allege anything Defendants Pfeiffer and Felder did or said that leads to this conclusion.  Plaintiff does not allege how Defendants Pfeiffer and Felder were responsible for or otherwise involved in the policies or practices at issue. Plaintiff also does not allege that any of the other defendants chose not to provide treatment due to these policies or practices. Without such facts, alleging that there was a general "mindset" that was "tolerated" is not sufficient to state a constitutional claim against these defendants.  To state a claim, a complaint must contain sufficient factual detail for the Court to draw the reasonable conclusion that the defendant is liable for the misconduct alleged. *Iqbal,* 556 U.S. at 678; *See also Krainskin v. Nev. Ex rel. Bd. Of Regents of Nev. Sys. Of Higher Educ.,* 616 F.3d 963, 969 (9th Cir. 2010) (dismissing complaint because plaintiff "merely alleged in a conclusory fashion that the officers 'knew or should have known'" of the violation); *Sullivan v. Biter,* 2017 WL 1540256, at *1 (E.D. Cal. Apr. 28, 2017) ("Conclusory allegations that various prison officials knew or should have known about constitutional violations occurring against plaintiff simply because of their general supervisory role are insufficient to state a claim under 42 U.S.C. § 1983.").

Thus, the Court finds that the complaint fails to state a claim against Defendants Pfeiffer and Felder for deliberate indifference on the basis of supervisory liability.

///

13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### iii.  Leave to Amend

Plaintiff requests leave to amend the complaint. (ECF No. 15 at 8.) Defendants' briefing does not address whether leave to amend should be granted. (*See* ECF Nos. 9, 16.)

Under Rule 15 of the Federal Rules of Civil Procedure, "the court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). As discussed above, the Court finds that Defendants Pfeiffer and Felder are entitled to Eleventh Amendment immunity. Plaintiff's opposition indicates that Plaintiff intends to impose liability against Defendants Pfeiffer and Felder in their personal capacity. (ECF No. 15 at 4.)The Court will recommend that Plaintiff be granted leave to amend the complaint to allege that the claims against Defendants Pfeiffer and Felder seek to impose personal liability for actions taken under color of state law.

Additionally, the Court will recommend that Plaintiff be granted leave to amend to the extent he can allege additional facts showing a causal link between Defendants Pfeiffer and Felder and the alleged deliberate indifference. If Plaintiff chooses to amend his complaint, he should describe what each defendant did that violated his constitutional rights. If liability as to Defendants Pfeiffer and Felder is based on the implementation of a policy, Plaintiff should describe what these defendants did to promulgate or implement the policy and should identify facts that lead Plaintiff to believe there is a policy that caused the constitutional violation.

### b.  Defendant Vitto

Defendant Vitto argues that the claim against him should be dismissed because Plaintiff does not allege what, if anything, he did or did not do to cause him harm. (ECF No. 9-1 at 8.) Plaintiff alleges that Defendant Vitto is a Licensed Vocational Nurse and is a healthcare worker duly licensed in the state of California to practice nursing or other ancillary healthcare but Defendant Vitto otherwise is not mentioned in the complaint. (*Id.*) Plaintiff, in turn, argues that the allegations against Defendant Vitto because Defendants Singh and Aflague have filed an answer admitting that Plaintiff was seen by nursing staff, which would include Defendant Vitto. (ECF No. 15 at 7.)

Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint is not required to include detailed factual allegations, it must set

forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). It must also contain "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Moreover, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77.

Plaintiff's complaint fails to connect Plaintiff's factual allegations to the claim he is attempting to bring against Defendant Vitto. Other than alleging Defendant Vitto's occupation, the complaint does not mention this defendant. Plaintiff does not allege how Defendant Vitto violated his constitutional rights. General references to "Defendants" or "nursing staff" do not give fair notice to Defendant Vitto to enable him to defend himself effectively. Therefore, the complaint violates Rule 8 and the Court recommends that the claim against Defendant Vitto be dismissed.

Plaintiff requests leave to amend. (ECF No. 15 at 7.) His opposition describes two occasions when Defendant Vitto saw Plaintiff but did not refer him to a doctor and only refilled his Ibuprofen. (*Id.*) Defendants again do not address Plaintiff's request for leave to amend. (*See* ECF Nos. 9, 16.) As discussed above, leave to amend should be freely granted. Thus, the Court will recommend that Plaintiff be granted leave to amend his claim against Defendant Vitto. As mentioned above, if Plaintiff chooses to amend his complaint, he should allege what each defendant did to violate his constitutional rights.

## VI.   CONCLUSION AND RECOMMENDATION

Accordingly, based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Defendants Pfeiffer, Felder, and Vitto's motion to dismiss (ECF No. 9) be granted;

2. Plaintiff be granted leave to amend his claims against Defendants Pfeiffer, Felder, and Vitto;

3. Plaintiff be directed to file his First Amended Complaint within thirty (30) days of service of an order adopting these findings and recommendations; and

4. Defendant be directed to respond to Plaintiff's First Amended Complaint within fourteen (14) days of service.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **August 31, 2021**                    /s/ *Erica P. Grosjean*
                                        UNITED STATES MAGISTRATE JUDGE

16