UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL RODRIGUEZ,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTIAN PFEIFFER, et al.,<br><br>Defendants. | Case No.  1:21-cv-00572-JLT-EPG<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION TO DISMISS BE GRANTED WITHOUT LEAVE TO AMEND<br><br>(ECF No. 29)<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS |

Before the Court is Defendants Michael Felder and Christian Pfeiffer's ("Defendants") motion to dismiss the First Amended Complaint.[1] (ECF No. 29.) The matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. For the following reasons, the Court recommends that the motion to dismiss be granted without leave to amend.

**I.     BACKGROUND**

**A.     Plaintiff's Complaint**

Plaintiff Manuel Rodriguez ("Plaintiff"), proceeding through counsel, filed this action pursuant to 42 U.S.C. § 1983 on April 5, 2021, alleging claims against Defendants Christian Pfeiffer, Michael Felder, Harpreet Singh R.N., E. Vitto,[2] L.V.N., Lawrence Alague R.N.R., and

---

[1] Defendants Singh, Vitto, and Alague do not join in the motion. (*See* ECF No. 29.) Defendant Igbinosa has not yet appeared in this case.
[2] This defendant has been referred to as both defendant "Vito" and defendant "Vitto." (*See* ECF Nos. 29, 32.) It is

1

Does 1 through 10 for deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment. (ECF No. 1.) Plaintiff's claims arise out of the defendants' delay in providing adequate medical treatment to Plaintiff after he suffered a neck injury in May of 2019 while incarcerated at Kern Valley State Prison, resulting in an epidural abscess that rendered him quadriplegic. (*Id.*)

### B. Defendants' First Motion to Dismiss

On June 14, 2021, Defendants Pfeiffer, Felder, and Vitto filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 9.) On September 1, 2021, the Court entered findings and recommendations recommending that the motion to dismiss be granted with leave to amend. (ECF No. 18.) As to Defendants Pfeiffer and Felder, the Court found that the complaint failed to include sufficient allegations to impose supervisory liability:

> Plaintiff does not allege that [Defendants Pfeiffer and Felder] were personally involved in the alleged deliberate indifference. Therefore, he must allege either that these [defendants] knew of the constitutional violations and failed to act to prevent them, or that they promulgated or implemented a constitutionally deficient policy. Plaintiff contends that the complaint adequately alleges that Defendants Pfeiffer and Felder were aware of and participated in 1) a culture of denying inmates care by considering pain complaints to be a sham and only for the purpose of obtaining medications for illicit or recreational purposes; and 2) a medical structure where nurses acted as gatekeepers for inmates to be seen by medical doctors in order to reduce costs. (ECF No. 15 at 6.)
>
> Again, Plaintiff alleges that "There was an administrative mandate set forth by custom and practice" that the KVSP nursing and ancillary staff would be primary healthcare providers and that inmates would be actively prevented from being treated by medical doctors. (*Id.*) There was also a mindset, which Defendants Pfeiffer and Felder encouraged and tolerated, that these "primary healthcare providers" would deny treatment and care and examination by medical doctors and would consider any inmate requesting treatment for pain or pain medication as being "drug seeking" and providing only over the counter pain medication, no matter the inmate's presentation. (*Id.*)
>
> The complaint's allegations regarding Defendants Pfeiffer and Felder's involvement in the alleged constitutional violations are conclusory and are not supported by sufficient factual detail. Plaintiff does not allege any facts supporting that there is such a policy, such as a document stating a policy or a statement by a medical professional referring to such a policy, informal or otherwise. Plaintiff does not allege anything Defendants Pfeiffer and Felder did or said that leads to this conclusion. Plaintiff does not allege how Defendants Pfeiffer and Felder were responsible for or otherwise involved in the policies or practices at issue. Plaintiff also does not allege that any of the other defendants chose not to provide treatment due to these policies or practices. Without such facts, alleging that there was a general "mindset" that was "tolerated" is not sufficient to state a constitutional

unclear which spelling is correct.

2

claim against these defendants. To state a claim, a complaint must contain sufficient factual detail for the Court to draw the reasonable conclusion that the defendant is liable for the misconduct alleged. *Iqbal,* 556 U.S. at 678; *See also Krainskin v. Nev. Ex rel. Bd. Of Regents of Nev. Sys. Of Higher Educ.,* 616 F.3d 963, 969 (9th Cir. 2010) (dismissing complaint because plaintiff "merely alleged in a conclusory fashion that the officers 'knew or should have known'" of the violation); *Sullivan v. Biter,* 2017 WL 1540256, at *1 (E.D. Cal. Apr. 28, 2017) ("Conclusory allegations that various prison officials knew or should have known about constitutional violations occurring against plaintiff simply because of their general supervisory role are insufficient to state a claim under 42 U.S.C. § 1983.").

(*Id.* at 12-13.) In recommending that Plaintiff be granted leave to amend, the provided the following instructions regarding Plaintiff's claims against Defendants Pfeiffer and Felder:

> [T]he Court will recommend that Plaintiff be granted leave to amend to the extent he can allege additional facts showing a causal link between Defendants Pfeiffer and Felder and the alleged deliberate indifference. If Plaintiff chooses to amend his complaint, he should describe what each defendant did that violated his constitutional rights. If liability as to Defendants Pfeiffer and Felder is based on the implementation of a policy, Plaintiff should describe what these defendants did to promulgate or implement the policy and should identify facts that lead Plaintiff to believe there is a policy that caused the constitutional violation.

(*Id.* at 14.)

On October 6, 2021, District Judge Dale A. Drozd entered an order adopting the Court's October 6, 2021 findings and recommendations. (ECF No. 20.) Plaintiff was directed to file an amended complaint within thirty days. (*Id.*)

## II.   FIRST AMENDED COMPLAINT

On November 16, 2021, Plaintiff filed his First Amended Complaint ("FAC"). (ECF No. 22.) The FAC's relevant factual allegations regarding Defendants Pfeiffer and Felder, which are accepted as true for the purposes of this motion, are as follows:[3]

> 3. Defendant CHRISTIAN PFEIFFER ('Pfeiffer') at all times mentioned was the Acting Warden at Kern Valley State Prison ('KVSP'), a correctional facility established by the CDCR. **As Warden, Defendant Pfeiffer had chief administrative responsibility for the operation of KVSP including but not limited those services charged with providing health care to inmates.**
> 4. Defendant MICHAEL FELDER ('Felder') at all times mentioned was the Chief Medical Executive of Kern Valley State Prison and in that position had overall charge with the provision of medical care at KVSP. **Defendant Felder gave general direction to the Chief Physician and Surgeon who in turn directed all medical and psychiatric clinical services at KVSP.**
>
> …
>
> 10. Defendants Pheiffer [sic] and Felder had the obligation under State, Federal and constitutional mandates to maintain the prison according to law so that it

---

[3] Allegations that differ from the original complaint have been bolded for emphasis.

3

would comply with Eighth Amendment requirements. The Defendants and each of them were and are under a legal obligation pursuant to Plata v Schwarznegger [sic] (9th Cir. 2010) 754 F.3d 1088 to provide medical care that complies with Eighth Amendment mandates. In part this required said Defendants to oversee the provision of healthcare at KVSP and ensure that it would provide adequate healthcare to those inmates with serious medical needs. Said Defendants knew that prisoners incarcerated would be totally dependent on Defendants for the provision of medical care, and that without the Defendants acting according to law, statute, to wit, inmates such as Plaintiff would not be unable to receive prompt and appropriate medical care.

**11. Defendant Felder was charged with planning, organizing, and directing the medical, psychiatric, dental and clinical services in the care and treatment of individuals at KVSP. The duties of Defendant Felder included but was not limited to planning and assigning work; passing upon difficult medical problems in directing the staff engaged in treating and caring for ward or inmate patients; assigning cases to physicians; directing the transfer of patients between institutions and outside facilities; supervising post-operative care of patients; directing the clinical and pathological work and ordering examinations and analyses; and outlining instructions for nurses and attendants in the care of patients. The above is just a partial enumeration of the designated tasks of a Chief Medical Officer, Correctional Facility (7547) as set forth by the California Department of Human Resources.**

. . .

13. Defendants' responsibility was to provide security in the jails for the welfare of all of the prisoners and inmates which included but was not limited to custodial supervision that would ensure the welfare of all prisoners according to the mandates of the State and Federal Constitutions. Said Defendants further had a responsibility to monitor those inmates and prisoners who were sick or ill in order to determine whether said inmates had serious medical needs to which response was required.

. . .

23.. . . There was a culture at KVSP, in fact tolerated and ratified at said facility by the administrative Defendants Acting Warden Christian Pfeiffer and Michael Felder, the CEO of Kern Valley State Prison  . . . that all prisoners would be viewed as persons who were seeking pain medications not for therapeutic purposes but for illicit and or recreational purposes. Therefore that culture resulted in all prisoners being viewed a liars when making complaints of pain and if pain medication was dispensed, it was essentially over the counter pan medication; no matter the presentation of the inmate. . [sic] This custom and practice had the net effect of denying medical care to persons with serious medical needs.

24. The Defendants and each of them were also aware that the medical staff at KVSP were primarily made up of nursing staff who act as the gatekeepers for inmates to be seen by medical doctors. Said nursing staff, were neither qualified by education, training or state licensing to act in this position. This was a deliberate policy to minimize the participation of medical doctors in the care and treatment of inmates to mimimize [sic] the cost of medical care.

25. In the case of Plaintiff, from the time he first sought examination and treatment for his neck injury, he was not seen by a medical doctor until more than one month after his first presentation; and it was only on account of his collapse on July 9, 2019 that he was seen by a medical doctor at that time. That delay was caused by

4

the Defendants' deliberate indifference to a serious medical need. The Defendants and each of them had reason to know that Plaintiff had a serious medical need in that as time progressed, his symptoms were getting worse and gave all indication of having nervous system involvement. The Defendants' practice was to minimize symptoms and complaints and to provide over the counter medication as a panacea for most if not all physical complaints.

26. Had the Plaintiff been sent immediately for definitive diagnosis when Plaintiff originally voiced physical complaints and sought treatment, Plaintiff would have more probably than not had a definitive treatment and cure of the epidural abscess. However, the delay of the Defendants caused by their deliberate indifference and conscious disregard was a substantial factor in the severity of his now permanent condition, quadriplegia. The deliberate indifference was the result of their subjective belief that all inmates including Plaintiff were 'drug seeking' and falsifying their symptoms as well as the custom and practice to minimize the costs of inmate medical care.

. . .

35.. . . From the standpoint of the administration of KVSP, Defendants Pfeiffer [and] Felder . . . created, maintained and promoted a system of rendition of medical care where the primary healthcare providers would be nursing and other ancillary healthcare staff who neither had the expertise nor the knowledge to diagnose and provide treatment of patients. There was an administrative mandate set forth by custom and practice that said nursing and ancillary staff would be primary healthcare providers and that inmates would be actively prevented from being treated by medical doctors. There was also a culture encouraged and tolerated by administrative staff of said prison which included Defendants Pheiffer [sic] [and] Felder . . . that said 'primary healthcare providers' would in fact deny treatment and care and examination by medical doctors and would consider any inmate requesting treatment for pain or pain medication as being 'drug seeking' and provide only over the counter pain medication, no matter the presentation of the inmate patient.

(*Id.* at 2-5, 10-11, 14.) (Emphasis added.)

### III. DEFENDANTS' SECOND MOTION TO DISMISS

On December 7, 2021, Defendants Pfeiffer and Felder filed the underlying motion to dismiss the FAC's claims against them. (ECF No. 29.) Plaintiff filed an opposition to the motion on December 27, 2021. (ECF No. 32.) On January 4, 2022, Defendants filed a reply in support of the motion. (ECF No. 33.) The matter was taken under submission on the record and briefs on file without oral argument. (ECF No. 31.)

#### A. Defendants' Position

The motion argues that the FAC only adds limited allegations regarding Defendants Pfeiffer and Felder and they are not sufficient to state an Eighth Amendment deliberate indifference claim as to these defendants. (ECF No. 29.) Specifically, the FAC does not allege

5

what Defendants Pfeiffer and Felder did to promulgate or implement a constitutionally deficient policy, that Plaintiff's treatment was the result of that policy, or any facts that lead Plaintiff to believe there is a policy that caused the constitutional violation. (*Id.* at 13-16.) Defendants further argue that Plaintiff misconstrues the applicable standard for supervisory liability. (ECF No. 33.)

### B.      Plaintiff's Position

Plaintiff argues that the FAC alleges Defendants Pfeiffer and Felder "had personal responsibility for the functioning of medical care at the facility" and "administrative responsibility for a medical system that . . . resulted in Eighth Amendment violations[.]" (ECF No. 32 at 2.) Specifically, Defendants Pfeiffer and Felder "ratified and tolerated" a culture of considering prisoners requesting pain medication as drug seeking, and oversaw healthcare staff that consisted primarily of nurses acting as gatekeepers to minimize medical costs. (*Id.* at 3.) The facts of the FAC also illustrate a "custom and practice" of the prison administration. (*Id.* at 5.) Defendants Felder and Pfeiffer were responsible for ratification of these policies, and were aware that they existed. (*Id.*) Additionally, the fact that Defendants Aflague, Vitto, and Singh have filed answers to the FAC acknowledges that Plaintiff has set forth a viable Eighth Amendment medical deliberate indifference claim. (*Id.* at 6.)

## IV.     LEGAL STANDARDS

### A.      Motions to Dismiss

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Hosp. Bldg. Co. v. Rex Hosp. Trustees*, 425 U.S. 738, 740 (1976). The Court must also construe the alleged facts in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir.1994) (*per curiam*). All ambiguities or doubts must also be resolved in the plaintiff's favor. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). "While the Court cannot accept new facts alleged in opposition papers, a plaintiff's briefing may always be used to clarify allegations in a complaint." *Yordy v. Astrue*, 2010 WL 653099, at *2 (N.D. Cal. Feb. 22, 2010) (citing *Pegram v. Herdrich,* 530 U.S. 211, 230 (2000)).

///

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. *See Iqbal*, 556 U.S. at 679. The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations and quotation marks omitted).

After assuming the veracity of all well-pleaded factual allegations, the second step is for the court to determine whether the complaint pleads "a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). The standard for plausibility is not akin to a "probability requirement," but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### B.   Supervisory Liability

A plaintiff proceeding under § 1983 must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978). Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *Iqbal*, 556 U.S. at 676-77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978).

To state a claim for relief under § 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implement[ed] a policy so deficient that the

policy itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citations and internal quotation marks omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). For instance, a supervisor may be liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations, quotation marks, and alterations omitted).

## V. DISCUSSION

### A. The FAC Fails to State a Claim Against Defendants Pfeiffer and Felder

Plaintiff does not allege that Defendants Pfeiffer and Felder were personally involved in the alleged deliberate indifference. (*See* ECF No. 22.) Therefore, to establish supervisory liability, Plaintiff must allege either that these defendants knew of the constitutional violations and failed to act to prevent them, or that they promulgated or implemented a constitutionally deficient policy. The Court finds that Plaintiff has failed to do so and the FAC therefore fails to state claim against Defendants Pfeiffer and Felder.

Here, as with the complaint, the FAC alleges that, by virtue of their positions as prison administrators, Defendants Pfeiffer and Felder were aware of and ratified a custom and practice of characterizing prisoners as drug seeking and allowing nurses to serve as gatekeepers to medical care in order to reduce costs. (*See* ECF Nos. 1, 22.) However, these allegations are again conclusory and not sufficiently supported by factual detail. (*See* ECF No. 18 at 12-13.) Despite the standards provided in the Court's findings and recommendations recommending the first motion to dismiss be granted, Plaintiff has not described what Defendants Pfeiffer and Felder did to promulgate or implement the policies at issue and has not identified any additional facts that led Plaintiff to believe there is a policy that caused the constitutional violation. (*See* ECF No. 18 at 14.) The FAC includes further information regarding Defendants Pfeiffer and Felder's responsibilities for prison administration generally, but does not include any factual allegations explaining Defendants Pfeiffer and Felder's involvement in developing or failing to discontinue the specific policies at issue in this case that led to the deprivation of Plaintiff's constitutional

rights.[4]

Plaintiff's theory of liability is premised on Defendants Pfeiffer and Felder's responsibilities generally as prison administrators, rather than their personal involvement in the deprivation of Plaintiff's constitutional rights. The FAC "plead[s] only in the most general terms" that Defendants Pfeiffer and Felder "knew or should have known [their] subordinate officers engaged in conduct giving rise to the underlying deprivation." *Tennyson v. County of Sacramento,* 2020 WL 4059568, at *3 (E.D. Cal. July 20, 2020). Plaintiff must provide factual support linking Defendants Pfeiffer and Felder to the underlying constitutional deprivation. *See Tennyson,* 2020 WL 4059568, at *3 (granting motion to dismiss supervisory liability claims where the plaintiff alleged that the defendant "knowingly participated in creating and maintaining" and culture that led to the alleged constitutional deprivation). Because Plaintiff has failed to provide factual detail indicating Defendants Pfeiffer and Felder were personally involved in the deprivation of Plaintiff's Eighth Amendment rights and instead relies on legal conclusions, the Court will recommend that the motion to dismiss be granted.

### B. Plaintiff Has Not Requested Leave to Amend

Defendants Pfeiffer and Felder argue that leave to amend should be denied because Plaintiff did not request it. (ECF No. 33.) Defendants are correct that Plaintiff's opposition does not address whether leave to amend should be granted. (*See* ECF No. 32.)

In the Court's findings and recommendations granting the first motion to dismiss, the Court provided the relevant pleading standards for supervisory liability and directed Plaintiff to "describe what each defendant did that violated his constitutional rights." (ECF No. 18 at 14.) If liability was premised on implementation of a policy, Plaintiff was instructed to "describe what [Defendants Pfeiffer and Felder] did to promulgate or implement the policy and . . . identify facts that lead Plaintiff to believe there is a policy that caused the constitutional violation." (ECF No. 18.) Plaintiff has failed to fully cure the deficiencies in his complaint. Therefore, the Court will recommend that the claims against Defendants Pfeiffer and Felder be dismissed without further

---

[4] Plaintiff's argument that the remaining defendants' answers to the FAC are an acknowledgement of the adequacy of the FAC's allegations is not persuasive. The FAC does not premise the claims against any of the other defendants on supervisory liability, with the exception of Defendant Igbinosa, who has not been served or appeared in this case. (*See* ECF Nos. 22, 36.)

leave to amend. *Carvalho v. Equifax Info. Servs., LLC,* 629 F.3d 876, 893 (9th Cir. 2010) ("[T]he district court may exercise its discretion to deny leave to amend due to . . . repeated failure to cure deficiencies by amendments previously allowed[.]").

## VI.   CONCLUSION AND RECOMMENDATION

Accordingly, based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Defendants Pfeiffer and Felder's motion to dismiss (ECF No. 29) be granted without leave to amend; and
2. The Clerk of Court be directed to terminate Defendants Pfeiffer and Felder on the docket.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **March 9, 2022**                    /s/ Erica P. Grosjean
                                                              UNITED STATES MAGISTRATE JUDGE