UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL RODRIGUEZ,<br><br>    Plaintiff,<br><br>v.<br><br>HARPREET SINGH, *et al.*,<br><br>    Defendants. | Case No. 1:21-cv-00572-JLT-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANT SPAETH'S MOTION TO DISMISS BE GRANTED<br><br>(ECF No. 50).<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS |

Before the Court is Defendant Martha Spaeth's ("Defendant Spaeth") motion to dismiss the Second Amended Complaint.[1] (ECF No. 50). The matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. For the following reasons, the Court recommends that Defendant Spaeth's motion to dismiss be granted.

**I.    BACKGROUND**

Manuel Rodriguez ("Plaintiff") is proceeding through counsel in this civil rights action pursuant to 42 U.S.C. § 1983. (ECF No. 1). Plaintiff filed the complaint commencing this action on April 2, 2021, alleging claims against Defendants Christian Pfeiffer, Michael Felder, Harpreet Singh R.N., E. Vitto, L.V.N., Lawrence Aflague R.N.R., and Does 1 through 10 for deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment (*Id.*)

---

[1] Defendants Singh, Vitto, and Aflague did not join in the motion. (*See* ECF No. 50).

1

Plaintiff's claims arise out of the defendants' delay in providing adequate medical treatment to Plaintiff after he suffered a neck injury in May of 2019 while incarcerated at Kern Valley State Prison, resulting in an epidural abscess that rendered him quadriplegic. (*Id.*)

On June 12, 2021, Defendants Pfeiffer, Felder, and Vitto filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On September 1, 2021, the Court entered findings and recommendations recommending that the motion to dismiss be granted with leave to amend. (ECF No. 18). On October 6, 2021, the presiding District Judge entered an order adopting the Court's October 6, 2021 findings and recommendations. (ECF No. 20.) Plaintiff was directed to file an amended complaint within thirty days. (*Id.*)

Plaintiff filed his first amended complaint ("FAC") on November 16, 2021. (ECF No. 22). Defendants Aflague, Singh, Vitto filed answers to Plaintiff's first amended complaint on November 22, 2021. (ECF Nos. 25, 26, 27).

On December 7, 2021, Defendants Felder and Pfeiffer filed a motion to dismiss the first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 29). On March 8, 2022, the Court entered findings and recommendations recommending that the motion to dismiss be granted without leave to amend. (ECF No. 38). The Court found that the first amended complaint failed to include sufficient allegations to impose supervisory liability:

> Here, as with the complaint, the FAC alleges that, by virtue of their positions as prison administrators, Defendants Pfeiffer and Felder were aware of and ratified a custom and practice of characterizing prisoners as drug seeking and allowing nurses to serve as gatekeepers to medical care in order to reduce costs. (*See* ECF Nos. 1, 22.) However, these allegations are again conclusory and not sufficiently supported by factual detail. (*See* ECF No. 18 at 12-13.) Despite the standards provided in the Court's findings and recommendations recommending the first motion to dismiss be granted, Plaintiff has not described what Defendants Pfeiffer and Felder did to promulgate or implement the policies at issue and has not identified any additional facts that led Plaintiff to believe there is a policy that caused the constitutional violation. (*See* ECF No. 18 at 14.) The FAC includes further information regarding Defendants Pfeiffer and Felder's responsibilities for prison administration generally, but does not include any factual allegations explaining Defendants Pfeiffer and Felder's involvement in developing or failing to discontinue the specific policies at issue in this case that led to the deprivation of Plaintiff's constitutional rights.
>
> Plaintiff's theory of liability is premised on Defendants Pfeiffer and Felder's responsibilities generally as prison administrators, rather than their personal involvement in the deprivation of Plaintiff's constitutional rights. The FAC

> "plead[s] only in the most general terms" that Defendants Pfeiffer and Felder "knew or should have known [their] subordinate officers engaged in conduct giving rise to the underlying deprivation." *Tennyson v. County of Sacramento,* 2020 WL 4059568, at *3 (E.D. Cal. July 20, 2020). Plaintiff must provide factual support linking Defendants Pfeiffer and Felder to the underlying constitutional deprivation. *See Tennyson,* 2020 WL 4059568, at *3 (granting motion to dismiss supervisory liability claims where the plaintiff alleged that the defendant "knowingly participated in creating and maintaining" and culture that led to the alleged constitutional deprivation). Because Plaintiff has failed to provide factual detail indicating Defendants Pfeiffer and Felder were personally involved in the deprivation of Plaintiff's Eighth Amendment rights and instead relies on legal conclusions, the Court will recommend that the motion to dismiss be granted.

(*Id.* at 8-9). Because Plaintiff's FAC failed "to fully cure the deficiencies in his complaint" regarding Defendants Pfeiffer and Felder, the Court recommended that the claims against those defendants be dismissed without further leave to amend. (*Id.* at 9-10).

On April 4, 2022, District Judge Jennifer L. Thurston entered an order adopting the Court's March 9, 2022 findings and recommendations. (ECF No. 39).

On May 3, 2022, the Court granted the parties' stipulation to substitute Defendant Spaeth for Defendant Ngozi Igbinosa, M.D. (ECF Nos. 41 & 42).

## II. PLAINTIFF'S SECOND AMENDED COMPLAINT

On May 5, 2022, Plaintiff filed his second amended complaint ("SAC"). (ECF No. 43). The SAC is identical to the FAC except for the substitution of Defendant Spaeth.[2] The SAC's relevant factual allegations regarding Defendant Spaeth are as follows:

> 5. Defendant **MARTHA SPAETH M.D**. previously identified as DOE 4 was at all times mentioned [… ] the Chief Physician and Surgeon at KVSP and as such was the chief medical doctor in charge of the provision of medical care at KVSP. Included in her responsibilities are overseeing all policies and procedures and the rendition of medical care at KVSP.
>
> . . .
>
> 12. Defendant **Spaeth** as the Chief Physician and Surgeon at CSP-COR had the legal obligation to supervise and monitor the quality of medical and psychiatric clinical care at said facility. Her job tasks included but were not limited to assisting in the supervision necessary to maintain high standards of medical care and treatment for an assigned unit; supervising the work of the medical staff and assisting in the coordination of their activities with those of the nursing, social work, rehabilitation therapy and other ancillary services; advising staff, either individually or by presiding at hospital ward, diagnostic and clinical conferences,

---

[2] The SAC includes claims against Defendants Pfeiffer and Felder. (ECF No. 43). However, as discussed, those defendants were dismissed without leave to amend on April 4, 2022. (ECF Nos. 38 & 39).

on appropriate treatment techniques for specific cases; reviewing clinical records of patients to assure their adequacy and proper documentation; making regular hospital ward rounds, special teaching rounds, and inspection tours to observe professional services given and the enforcement of hospital regulations; examining and treating patients requiring more difficult forms of medical treatment; serving as consultant to staff members on unusual or difficult medical problems; arranging, as necessary for consultation on difficult cases with medical authorities outside the hospital; encouraging research by staff members; reviewing plans for research projects, and recommending their approval to the chief medical officer; presenting recommendations to the chief medical officer on such matters as hospital policy, new forms of treatment, the need for equipment and facilities and personnel and budgeting; training and evaluating the performance of personnel and taking or recommending appropriate action; assigning medical officers to shifts and posts; including medical officer of the day and weekend duty; planning and reviewing the instruction of assigned residents, interns, and other students; informing the chief medical officers on such matters as new or improved techniques developed by the staff or by other medical personnel, trends in the incidence of diseases, and need for new or improved medical services, maintaining order and supervising the conduct of persons committed to the California Department of Corrections; preventing escapes and injuries by these persons to themselves, others or to property; maintaining security of working areas and work materials; and inspecting premises and searching inmates for contraband such as weapons or drugs. The above is just a partial enumeration of the designated tasks of a Chief Physician and Surgeon-Correctional Facility (9267) as set forth by the California Department of Human Resources.

13. Defendants' responsibility was to provide security in the jails for the welfare of all of the prisoners and inmates which included but was not limited to custodial supervision that would ensure the welfare of all prisoners according to the mandates of the State and Federal Constitutions. Said Defendants further had a responsibility to monitor those inmates and prisoners who were sick or ill in order to determine whether said inmates had serious medical needs to which response was required.

. . .

23. The Defendants and each of them acted with deliberate indifference to the medical condition of Plaintiff. There was a culture at KVSP, in fact tolerated and ratified at said facility by the administrative Defendants Acting Warden Christian Pfeiffer and Michael Felder, the CEO of Kern Valley State Prison, and the Chief Physician and Surgeon, **Martha Spaeth M.D.** that all prisoners would be viewed as persons who were seeking pain medications not for therapeutic purposes but for illicit and or recreational purposes. Therefore that culture resulted in all prisoners being viewed a liars when making complaints of pain and if pain medication was dispensed, it was essentially over the counter pan medication; no matter the presentation of the inmate. . This custom and practice had the net effect of denying medical care to persons with serious medical needs.

24. The Defendants and each of them were also aware that the medical staff at KVSP were primarily made up of nursing staff who act as the gatekeepers for

inmates to be seen by medical doctors. Said nursing staff, were neither qualified by education, training or state licensing to act in this position. This was a deliberate policy to minimize the participation of medical doctors in the care and treatment of inmates to minimize the cost of medical care.

25. In the case of Plaintiff, from the time he first sought examination and treatment for his neck injury, he was not seen by a medical doctor until more than one month after his first presentation; and it was only on account of his collapse on July 9, 2019 that he was seen by a medical doctor at that time. That delay was caused by the Defendants' deliberate indifference to a serious medical need. The Defendants and each of them had reason to know that Plaintiff had a serious medical need in that as time progressed, his symptoms were getting worse and gave all indication of having nervous system involvement. The Defendants' practice was to minimize symptoms and complaints and to provide over the counter medication as a panacea for most if not all physical complaints.

26. Had the Plaintiff been sent immediately for definitive diagnosis when Plaintiff originally voiced physical complaints and sought treatment, Plaintiff would have more probably than not had a definitive treatment and cure of the epidural abscess. However, the delay of the Defendants caused by their deliberate indifference and conscious disregard was a substantial factor in the severity of his now permanent condition, quadriplegia. The deliberate indifference was the result of their subjective belief that all inmates including Plaintiff were 'drug seeking' and falsifying their symptoms as well as the custom and practice to minimize the costs of inmate medical care.

. . .

35. . . . From the standpoint of the administration of KVSP, Defendants Pfeiffer, Felder **and Spaeth** created, maintained and promoted a system of rendition of medical care where the primary healthcare providers would be nursing and other ancillary healthcare staff who neither had the expertise nor the knowledge to diagnose and provide treatment of patients. There was an administrative mandate set forth by custom and practice that said nursing and ancillary staff would be primary healthcare providers and that inmates would be actively prevented from being treated by medical doctors. There was also a culture encouraged and tolerated by administrative staff of said prison which included Defendants Pheiffer, Felder and **[Spaeth]** that said 'primary healthcare providers' would in fact deny treatment and care and examination by medical doctors and would consider any inmate requesting treatment for pain or pain medication as being 'drug seeking' and provide only over the counter pain medication, no matter the presentation of the inmate patient.

(ECF No. 43, p. 5-13) (emphasis added).

### III.   MOTION TO DISMISS

On July 22, 2022, Defendant Spaeth filed the underlying motion to dismiss the SAC's claim against her for deliberate indifference to serious medical needs in violation of the Eighth Amendment. (ECF No. 50). On August 3, 2022, Plaintiff filed an opposition. (ECF No. 51).

5

Defendant Spaeth filed a reply on August 12, 2022. (ECF No. 52). A hearing was held on August 20, 2022. (ECF No. 55). Greg Garrotto appeared on behalf of Plaintiff. (*Id.*) Howards Skebe appeared on behalf of Defendant Spaeth. (*Id.*)

### A.     Defendant Spaeth's Position

The motion argues that the SAC fails to allege that Defendant Spaeth personally participated in the alleged constitutional deprivation. (ECF No. 50-1). Further, the SAC fails to state a claim for deliberate indifference against Defendant Speath predicated on supervisory liability. (*Id.*) Because the SAC's allegations against Defendant Spaeth are identical, aside from job titles and duties, to the allegations made against dismissed defendants Pfeiffer and Felder, the SAC's claim against Defendant Spaeth should be dismissed as well. (*Id.* at 1-2). As the dismissed defendants argued previously, Defendant Spaeth now argues that the SAC does not allege what Defendant Spaeth did to promulgate or implement a constitutionally deficient policy, that Plaintiff's treatment was the result of that policy, or any facts that led Plaintiff to believe that there was a policy that caused the constitutional violation (*Id.* at 8-11).

Defendant Spaeth further argues that Plaintiff misconstrues the applicable standard for supervisory liability and cannot rely on the generic duties of a person holding the title "Chief Physician and Surgeon-Correctional Facility." (ECF No. 52, p. 2-3; 4-6). Finally, Defendant argues that the Court should not grant Plaintiff leave to amend the SAC because Plaintiff has not requested leave to amend, and because "while Defendant Spaeth is a newly added Defendant and this is her first challenge to the pleadings, Plaintiff has twice litigated these precise issues with now-dismissed defendants Pfeiffer and Felder." (*Id.* at 6).

### B.     Plaintiff's Position

Plaintiff argues that the SAC alleges Defendant Spaeth "had a responsibility to monitor those inmates and prisoners who were sick and ill in order to determine whether said inmates had serious medical needs to which response was required" based on the job description of the "Chief Physician and Surgeon" role provided by the State. (ECF No. 51, p. 5). Further, "the express terms" of the job description provide that Defendant Spaeth was responsible for supervising the medical staff and coordinating their activities with nursing and other health care providers. (*Id.*)

According to Plaintiff, the uniform response to Plaintiff's medical requests was consistent

with the custom of practice of "prison medical staff to view inmates as drug seeking" and "to deliberately minimize the participation of doctors in the care and treatment of prisoners for cost savings purposes." (*Id.* at 4). Supervisory liability attaches to Defendant Spaeth because the SAC alleges that "Defendant Spaeth had direct involvement in the coordination of the different types of health care providers in this case" and the uniform response to Plaintiff's medical requests "related specifically to that coordination." (*Id.* at 8).

## IV. LEGAL STANDARDS

### A. Motions to Dismiss

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Hosp. Bldg. Co. v. Rex Hosp. Trustees*, 425 U.S. 738, 740 (1976). The Court must also construe the alleged facts in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. *See Iqbal*, 556 U.S. at 679. "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer*, 416 U.S. at 236 (1974).

The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations and internal quotation marks omitted).

7

After assuming the veracity of all well-pleaded factual allegations, the second step is for the court to determine whether the complaint pleads "'a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. 662 at 678 (citations omitted). "Determining whether a complaint states a plausible claim for relief … [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### B.      Supervisory Liability

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged. *Iqbal*, 556 U.S. at 676-77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under section 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," *Hansen*, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in

8

the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

## V. DISCUSSION

Plaintiff does not allege that Defendant Spaeth was personally involved in the alleged deliberate indifference. (*See* ECF No. 43). Therefore, to establish supervisory liability, Plaintiff must allege either Defendant Spaeth knew of the constitutional violations and failed to act to prevent them, or that she promulgated or implemented a constitutionally deficient policy. The Court finds that Plaintiff has failed to sufficiently allege either and thus, the SAC fails to state claim against Defendant Spaeth.

Here, the SAC alleges that because of Defendant Spaeth's supervisory position as Chief Physician and Surgeon at KSVP, Defendant Spaeth was aware of and ratified a custom and practice of treating prisoners as drug seeking and allowing nursing staff to act as gatekeepers to medical doctors in order to reduce costs. However, these allegations are conclusory and not sufficiently supported by factual detail. Plaintiff has not described what Defendant Spaeth did to promulgate or implement the policies at issue. Further, Plaintiff does not allege any facts supporting that there is such a policy, such as a document stating a policy or a statement by a medical professional referring to such a policy, informal or otherwise. Plaintiff does not allege anything Defendant Spaeth did or said that leads to this conclusion other than the conclusory statement that Defendant Spaeth's supervision was responsible for the lack of coordination between medical staff. Plaintiff does not allege how Defendant Spaeth was responsible for or otherwise involved in the policies or practices at issue. Plaintiff also does not allege that any of the other defendants chose not to provide treatment due to these policies or practices. Without such facts, alleging that there was a general "mindset" that was "tolerated" is not sufficient to state a constitutional claim against Defendant Spaeth. *See Iqbal*, 556 U.S. at 678; *Krainskin v. Nev. Ex rel. Bd. Of Regents of Nev. Sys. Of Higher Educ.*, 616 F.3d 963, 969 (9th Cir. 2010) (dismissing complaint because plaintiff "merely alleged in a conclusory fashion that the officers 'knew or should have known'" of the violation); *Sullivan v. Biter*, 2017 WL 1540256, at *1 (E.D.

9

Cal. Apr. 28, 2017) ("Conclusory allegations that various prison officials knew or should have known about constitutional violations occurring against plaintiff simply because of their general supervisory role are insufficient to state a claim under 42 U.S.C. § 1983.").

Moreover, the SAC's general references to the job responsibilities and duties of the position held by Defendant Spaeth are insufficient to state a claim for supervisory liability. *See Carlson v. Duffy*, 2019 WL 952566, at *5 (E.D. Cal. 2019) (job descriptions set forth in CDCR Operations Manual that purportedly create legal responsibility are not, by themselves, sufficient to state a claim for supervisory liability).

Thus, the Court finds that the complaint fails to state a claim against Defendant Spaeth for deliberate indifference on the basis of supervisory liability.

## V.  CONCLUSION AND RECOMMENDATIONS

The Court concludes that Defendant Spaeth's motion to dismiss should be granted because Plaintiff's SAC fails to state a claim against Defendant Spaeth.

Further, the Court does not recommend granting leave to amend in this case. Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "the court should freely give leave [to amend] when justice so requires." However, "[d]ismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). Here, Plaintiff has argued the issue of supervisory liability on the basis of the same purported policy three times. The Court concluded, based on identical facts as alleges in Plaintiff's SAC, that Plaintiff has failed to allege sufficient facts demonstrating that such a policy existed. For that reason, it appears that further leave to amend would be futile.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant Spaeth's motion to dismiss be granted (ECF No. 50), and Defendant Spaeth be dismissed from this action with prejudice and without leave to amend;
2. This action continue to proceed on Plaintiff's Eighth Amendment claims against Defendants Aflague, Singh, and Vitto for deliberate indifference of serious medical needs. (*See* ECF Nos. 1, 43).

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen

(14) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **January 4, 2023**         /s/ Erica P. Grosjean
                                   UNITED STATES MAGISTRATE JUDGE