1

2

3

4

5

6

7                              UNITED STATES DISTRICT COURT

8                             EASTERN DISTRICT OF CALIFORNIA

9

10   MANUEL RODRIGUEZ,                          Case No. 1:21-cv-00572-JLT-EPG (PC)

11                        Plaintiff,            FINDINGS AND RECOMMENDATIONS,
                                                RECOMMENDING THAT DEFENDANTS'
12            v.                                MOTION FOR SUMMARY JUDGMENT BE
                                                GRANTED, IN PART, AND DENIED, IN
13   PFEIFFER, *et al.*,                        PART

14                        Defendants.           (ECF No. 84)

15                                              OBJECTIONS, IF ANY, DUE WITHIN
                                                THIRTY DAYS
16

17           Plaintiff Manuel Rodriguez ("Plaintiff") is proceeding through counsel in this civil rights

18   action filed pursuant to 42 U.S.C. § 1983. This case proceeds on Plaintiff's claim that Defendants

19   Elva Vitto, Harpreet Singh, and Lawrence Aflague[1], Jr. ("Defendants") were deliberately

20   indifferent to his serious medical needs in violation of the Eighth Amendment. (ECF No. 43).

21   More specifically, Plaintiff alleges that Defendants delayed Plaintiff's ability to be examined by a

22   medical doctor following a neck injury, which ultimately resulted in an epidural abscess

23   rendering Plaintiff quadriplegic. (*Id.* at 6[2]).

24           Defendants now move for summary judgment, arguing that the evidence shows that they

25   were not deliberately indifferent to Plaintiff's serious medical needs and that they are entitled to

26   _____

     [1] The docket and record contain several inconsistent spellings of Defendant's name. The Court refers to
27   this defendant using the spelling "Aflague," consistent with Defendant counsel's briefings.
     [2] Unless otherwise indicated, page numbers refer to the pagination appearing at the bottom of each
28   document, not the blue page numbers generated by the CM/ECF system. When referring to the CM/ECF
     system's page numbers, they are preceded by "ECF p."

                                                     1

qualified immunity. (ECF No. 84-1). For the reasons explained below, it is recommended that Defendants' motion for summary judgment be granted as to Plaintiff's deliberate indifference claims against Defendant Vitto. However, it is recommended that the motion be denied as to Plaintiff's deliberate indifference claim against Defendants Singh and Aflague, Jr.

## I.     BACKGROUND

Plaintiff, proceeding through counsel, filed the initial complaint commencing this action on April 5, 2021, alleging multiple employees at Kern Valley State Prison (KVSP) deprived him of adequate medical care for a known serious medical need in violation of the Eighth Amendment. (ECF No. 1 at 9).

The complaint alleged that in May 2019, while incarcerated at KVSP, Plaintiff suffered a neck injury. (*Id.* at 3). Plaintiff began having progressive pain and disability and was seen by nursing staff who did not possess the training, experience, or knowledge to properly evaluate Plaintiff's injury, diagnose his condition, or recommend diagnostic testing. (*Id.*). Medical staff refused to refer Plaintiff to a doctor and acted as "gatekeepers" to minimize the involvement of doctors to keep healthcare costs down. (*Id.* at 3, 7, 10). Plaintiff finally saw a doctor on July 9, 2019, because he collapsed, could not ambulate, and suffered sensory changes. (*Id.* at 3-4). The doctor determined Plaintiff had a sensory deficit below his chest at the thoracic T8/9 level, and Plaintiff was transferred to an outside facility to rule out an epidural abscess. (*Id.* at 6). Plaintiff was subsequently diagnosed with an epidural abscess and operated upon. (*Id.*). Due to the delay in diagnosis and treatment, the abscess caused severe, catastrophic, and disabling damage, rendering Plaintiff quadriplegic. (*Id.* at 6-7).

After several amendments and motions to dismiss, this case now proceeds on Plaintiff's Second Amended Complaint (SAC) filed on May 5, 2022, (ECF No. 43), on Plaintiff's claim for deliberate indifference to serious medical needs against defendants Vitto, Singh, and Aflague.

## II.    Defendants' Motion for Summary Judgment

### A.  Defendants' Motion

On December 29, 2023, Defendants filed a motion for summary judgment. (ECF No. 84). The motion is made on the grounds that Defendants were not deliberately indifferent to Plaintiff's serious medical needs and Defendants are entitled to qualified immunity. (*Id.* at 1). In addition to

Defendants' Statement of Undisputed Facts, declarations by Defendants, and excerpts of Plaintiff's medical records, Defendants support their motion for summary judgment with declarations and reports by medical experts Dr. Venkatasubramanian and Chief Nurse Executive Susana Ramirez. (ECF Nos. 84-6 through 84-11).

Defendants argue that Defendant Vitto was not deliberately indifferent to Plaintiff's serious medical needs, "[b]ecause [Plaintiff] lacks any evidence to demonstrate an affirmative causal link between Defendant Vitto's actions and the claimed deprivation[:]the alleged failure to appropriately treat or diagnose his epidural abscess that ultimately caused his incomplete paraplegia[.]" (*Id.* at 17-18). Additionally, Defendants assert that Plaintiff has not demonstrated that Defendant Vitto had the requisite mental state necessary for deliberate indifference. (*Id.* at 18). As to Defendants Singh and Aflague, Defendants argue they were not deliberately indifferent to Plaintiff's serious medical needs because: (1) the actions by Defendants Singh and Aflague in responding to Plaintiff's concerns were objectively reasonable under the circumstances, and (2) Plaintiff has not demonstrated that Defendants Singh or Aflague had the requisite mental state necessary for deliberate indifference. (*Id.* at 19-24).

Defendants also argue that they are entitled to qualified immunity.

## B. Plaintiff's Opposition

Plaintiff filed his Opposition to Defendants' motion for summary judgment on January 12, 2024. (ECF No. 88). Plaintiff supports his Opposition with his response to Defendants' Statement of Undisputed Facts, a Statement of Further Disputed Facts, a memorandum of objection to evidence with a declaration from Plaintiff's counsel, the transcripts of the depositions of Defendants and Plaintiff, Plaintiff's medical records, and a report from the Office of the Inspector General. Plaintiff contends that Defendants were deliberately indifferent to his serious medical needs by "knowingly acting blindly" to his complaints. (ECF No. 88 at 15). Plaintiff alleges that Defendant Vitto "blindly" refilled Plaintiff's ibuprofen prescription; Defendant Singh dismissed Plaintiff's complaints and, rather than referring Plaintiff to a doctor, consulted a doctor who ordered an x-ray; Defendant Aflague, with knowledge of Plaintiff's serious complaints of pain, provided no treatment and "unilaterally" made the decision to refer Plaintiff to a medical doctor within 14 days; and Defendants Singh and Aflague acted as "gatekeepers" with the sole authority

to refer patients to doctors. (*Id.*). Plaintiff also alleges that Defendants Singh and Aflague improperly made diagnoses with "no professional or educational background whatsoever." (*Id.*). Plaintiff claims Defendants Singh and Aflague violated the California Nursing Practices Act because no evidence has been presented of any standardized procedures by which patients are referred to doctors. (ECF No. 88 at 18). Plaintiff further argues that the Court should disregard the expert opinions offered by Defendants because expert testimony is not required to establish deliberate indifference, the evidence is irrelevant, and the experts are unqualified. (ECF No. 88 at 12-13, 18-19).

As to qualified immunity, Plaintiff argues it does not apply because the Eighth Amendment prohibition against cruel and unusual punishment is clear, and Defendants would have known Plaintiff's rights would be violated by their failing to provide him with treatment or access to medical care. (*Id.* at 21-22).

### C.  Defendants' Reply

On February 21, 2024, Defendants filed their Reply to Plaintiff's Opposition. (ECF No. 93). Defendants support the Reply with additional declarations from their experts, including excerpts from CDCR's nursing protocols, and their response to Plaintiff's Further Disputed Facts. In addition to reiterating their original arguments, Defendants contend that Plaintiff's argument that Defendants Singh and Aflague violated the California Nursing Practices Act was raised for the first time in Plaintiff's Opposition, and thus should be disregarded. (ECF No. 93 at 3-4). Defendants contend, however, that should the Court consider this argument, that Defendants did act according to standardized procedures. (*Id.* at 4-5). Defendants contend their expert evidence is relevant and both experts are qualified. (*Id.* at 11-14).

### III.   LEGAL STANDARDS

### A.  Summary Judgment

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the

record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). If the moving party does so, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial," which is not a light burden, and the non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322. Additionally, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). The Court need only draw inferences, however, where there is "evidence in the record . . . from which a reasonable inference . . . may be drawn"; the Court need not entertain inferences that are unsupported by fact. *Celotex*, 477 U.S. at 330 n. 2 (citation omitted). And "[t]he evidence of the

non-movant is to be believed." *Anderson*, 477 U.S. at 255. In reviewing a summary judgment motion, the Court may consider other materials in the record not cited to by the parties but is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

### B. Deliberate Indifference

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)) (citation and internal quotation marks omitted), *overruled on other grounds by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (*en banc*).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

Additionally, a difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Toguchi*, 391 F.3d at 1058. Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation

merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (*en banc*).

## IV.   DISCUSSION[3]

### A.  Undisputed Facts[4]

Although the parties dispute many facts related to the events at issue, the Court finds that the following relevant facts are undisputed.

Between May 2019 and July 9, 2019, Plaintiff was an incarcerated and convicted prisoner at Kern Valley State Prison (KVSP). (SFDF[5] 1). On June 6, 2019, Plaintiff submitted his first health care request form, which stated, "shoulder injury; it's been over a month and getting worse." (DSUF[6] 1). On June 7, 2019, Plaintiff was seen by a nurse (who is not a defendant in this case). (DSUF 2). Plaintiff complained of pain in his right shoulder. (DSUF 2, DSUF 86). Plaintiff was prescribed NSAIDs and told to refrain from exercises involving his shoulder or overuse and to seek care if his symptoms changed or got worse. (DSUF 4).

On July 1, 2019, Plaintiff submitted a refill request for his ibuprofen prescription and on July 2, 2019, it was reviewed by a registered nurse who authorized the refill. (DSUF 10). On July 2, 2019, Defendant Vitto, a Licensed Vocational Nurse (LVN), entered the refill order and emailed the pharmacy. (DSUF 10). Six minutes later, the pharmacy completed the refill and noted that Plaintiff would require a doctor's order to continue the prescription past July 7, 2019. (DSUF 10).

On July 4, 2019, Defendant Singh, a Registered Nurse, was assigned to the Treatment and Triage Area (TTA) on first watch. (DSUF 14). Shortly after midnight, Defendant Singh responded to a medical emergency call when Plaintiff complained of chest pain. (DSUF 15).

---

[3] The parties have included voluminous objections to evidence submitted by each other. The Court will not rule on these objections, unless needed to address evidence the Court deems necessary to resolve this motion, set forth below. Nothing in this order precludes a party from moving to exclude evidence at trial.
[4] For readability, minor alterations to some quoted excerpts have been made, such as to spelling and punctuation, without noting each alteration.
[5] "SFDF" refers to Plaintiff's Statement of Further Disputed Facts.
[6] "DSUF" refers to Defendants' Statement of Undisputed Facts.

Defendant Singh arrived within one minute of the call. (*Id.*). An electrocardiogram (EKG) was performed to determine if Plaintiff was in cardiac distress. (DSUF 21). The EKG showed a normal sinus rhythm with sinus arrhythmia suggesting Plaintiff was not suffering from cardiac issues. (*Id.*). Defendant Singh consulted with the on-call physician. (DSUF 25). Defendant Singh discharged Plaintiff and instructed Plaintiff to notify medical staff or submit a health care request form if he had increased pain or other concerns. (DSUF 26). Defendant Singh entered the order for a follow up the next day, and emailed nursing staff about the appointment, describing Plaintiff's then-perceived condition as "muscle skeletal right side chest pain." (DSUF 28, 79). Defendant Singh did not refer Plaintiff for any appointment with a doctor in the future.

On July 8, 2019, Plaintiff was seen by Defendant Aflague who was working as a relief nurse. (DSUF 36). Defendant Aflague discussed with Plaintiff the report from a cervical spine x-ray taken on July 5, 2019. (DSUF 44). Defendant Aflague told Plaintiff that he might be experiencing a nerve-related issue. (DSUF 45). Defendant Aflague entered a referral for a follow-up appointment with a physician within two weeks. (DSUF 47).

The next day, on July 9, 2019, Plaintiff's legs "gave out on him." (DSUF 102). Medical staff responded to an alarm when Plaintiff complained of back pain and could not move his lower extremities. (DSUF 52). Plaintiff was brought to the TTA and examined by Dr. Sao. (DSUF 53). This was the first time Plaintiff was seen by a doctor since the commencement of his symptoms. (FDF 7). Dr. Sao ordered that Plaintiff be emergently transported to an outside hospital for labs and an MRI. (DSUF 53).

Plaintiff was admitted to Adventist Health, where it was determined that Plaintiff had methicillin-susceptible Staphylococcus aureus (MSSA) sepsis with an epidural abscess at C6-7, and Plaintiff underwent a laminectomy on July 10, 2019. (DSUF 54, 55). Doctors opined that the MSSA sepsis caused an epidural abscess from C6 through C7, resulting in spinal cord compression and leading to dense paraplegia and sensory deficit. (DSUF 57).

## B.  Defendant Vitto

The Court first addresses Defendants' argument regarding Defendant Vitto.  Defendants argue that summary judgment is appropriate because Defendant Vitto's role was limited to entering a refill order for ibuprofen and emailing the pharmacy to ensure that the refill was

completed.  Defendants argue that such limited involvement does not rise to the level of deliberate indifference to serious medical needs.

Plaintiff's opposition does little to address Plaintiff's claim against Defendant Vitto, besides asserting that Defendant Vitto "blindly refilled the ibuprofen prescription of Plaintiff." ECF No. 88 at 15.

As to Defendant Vitto, the Court finds that Defendants have submitted sufficient evidence that no reasonable jury could find for Plaintiff as to his claim for deliberate indifference to serious medical needs against Defendant Vitto. It is undisputed that Defendant Vitto's sole involvement in the care of Plaintiff's medical issue was limited to refilling his prescription for ibuprofen. It is undisputed that Defendant Vitto did so promptly. Plaintiff has presented no evidence that Defendant Vitto had information that would have warranted additional medical care, nor that Defendant Vitto had the responsibility to assess and direct such care.

Accordingly, Plaintiff has failed to submit evidence that a jury could find that Defendant Vitto acted with deliberate indifference to Plaintiff's serious medical needs. Therefore, the Court recommends granting Defendants' motion for summary judgment as to Plaintiff's claim for deliberate indifference to serious medical needs as to Defendant Vitto.

### C. Defendant Singh

Defendants next argue that Defendant Singh is entitled to summary judgment because his actions were objectively reasonable under the circumstances, and he did not possess the requisite mental state for deliberate indifference. ECF No. 84-1 at 18-21. Defendants rely extensively on expert evidence opining, among things, that spinal epidural abscesses are extremely rare; Plaintiff lacked the classic triad of symptoms of focal back pain, fever, and neurological deficit; it is not uncommon for a delayed diagnosis of spinal epidural abscess; Plaintiff was younger than the average age of onset; and Plaintiff failed to disclose his intravenous drug use. Defendants also argue that Defendant Singh's treatment shows that he acted reasonably according to Defendant Singh's own belief that Plaintiff suffered from a muscular-skeletal issue.

Plaintiff's opposition argues that Defendant Singh should not have made any diagnosis of Plaintiff's condition because Defendant Singh was a nurse and not a doctor. Rather than argue that Defendant Singh should have appropriately diagnosed and treated Plaintiff for a spinal

epidural abscess, Plaintiff argues that Defendant Singh (and Defendant Aflague, as discussed below) should have referred Plaintiff on an emergency basis to a physician. After all, when Plaintiff was seen for the first time by a doctor (Dr. Sao), the doctor immediately diagnosed him as having signs and symptoms of an epidural abscess and facilitated Plaintiff's care on an emergency basis. Plaintiff argues that Singh's improper diagnosis of a muscular-skeletal issue was outside Defendant Singh's professional role and ability. According to Plaintiff, making such a diagnosis violated the California Nurses Practices Act, which sets the scope of practice for nurses, and which does not include medical diagnosis.  For example, nurses are tasked with the following:

> Observation of signs and symptoms of illness, reactions to treatment, general behavior, or general physical condition, and (A) determination of whether the signs, symptoms, reactions, behavior or general appearance exhibits abnormal characteristics; and (B) implementation, based on observed abnormalities, of appropriate reporting, or referral or standardized procedures, or changes in treatment in accordance with standardized procedures, or the initiation of emergency procedures.

ECF No. 88 at 17.[7] Plaintiff argues that there are no standardized procedures for referring inmates to doctors, and that Defendant Singh violated his responsibilities by failing to refer Plaintiff immediately to a doctor.

Plaintiff also argues that Defendants' expert opinions of Chitra Venkatasubramanian and Susana Ramirez should be disregarded because Venkatasubramanian has never written or spoken on the area of epidural abscess, and Ramirez is not a licensed nurse in California.

In reply, Defendants argue that Plaintiff may not raise a separate claim for violation of the California Nursing Practices Act. Moreover, Defendants point to the Health Care Department Operations Manual for standardized procedures and protocols. According to those procedures:

> When inmates request health care services via written forms (also known as CDCR 7362 Health Care Services Request Forms), RNs triage the forms and "determine whether the patient requires urgency/emergency or routine care." If there is an urgent/emergency medical need, the RN must "immediately refer" such needs to the appropriate clinician for evaluation.  . . . If the Primary Care RN determines that a physician referral is necessary, the following timeframes are

---

[7] To the extent Plaintiff's opposition attempts to assert an independent claim for violation of the California Nursing Practices Act, the Court declines to do so. Plaintiff's Second Amended Complaint did not assert such a claim.

relevant: (1) Emergency – immediately; (2) Urgent – within twenty-four hours; and (3) Routine—within fourteen calendar days.

ECF No. 93 at 5 (internal citations omitted). Defendants argue that Plaintiff "did not exhibit any symptoms consistent with chest pain, aside from his subjective statements." ECF No. 93 at 7. Defendants then argue that "[d]espite the fact that Nurse Singh could not substantiate Plaintiff's subjective complaints of pain," Defendant Singh notified a doctor of Plaintiff's symptoms, scheduled Plaintiff for a follow-up with another RN and an x-ray the next day, and sent an email to staff about the next day's appointment. Defendants argue that Defendant Singh's actions were consistent with applicable protocols.

As Plaintiff focuses on Defendant Singh's failure to send Plaintiff to a physician, rather than to accurately diagnose Plaintiff's condition himself, the Court looks to the evidence regarding when Defendant Singh was required to refer Plaintiff to a physician and compares that with the evidence regarding what Defendant Singh learned during the medical evaluation of Plaintiff.

According to Defendants' own evidence regarding the procedures and protocols for musculoskeletal complaints, RNs should "refer patient to physician on a STAT, Urgent, or Routine basis," if the following conditions are present:

- "Extremity pain or stiffness: If alteration in circulation or sensation, new deformity or discoloration, or patient appears ill or has history of fever, chills, headache, nausea, vomiting, or diarrhea." ECF No. 93-2 at ECF p. 5.
- "Acute low back pain." ECF No. 93-2 at ECF p. 6.

Moreover, in cases of chest pain, RNs should refer the patient to a physician in the following situations:

- "Chest pain accompanied by lightheadedness, nausea, sweating, or shortness of breath; pain spreading to shoulders, neck, arms, jaw; pain in back between shoulder blades; uncomfortable pressure, or pain in the center of the chest lasting more than 15 minutes. Chest pain, associated with palpitations or arrhythmias, tachycardia or bradycardia, or hypotension." ECF No. 93-2 at ECF p. 10.

The Court next compares these procedures with the evidence regarding Plaintiff's

11

symptoms at the time of consulting with Defendant Singh to determine if Plaintiff has presented evidence that he presented with symptoms that warranted a referral to a physician at the time.

According to Defendant Singh's declaration, on July 4, 2019, "Mr. Rodriguez complained of pain in the right side of his chest and stated the area was tender to the touch and sore." ECF No. 84-4 at 2.  Additionally, "Mr. Rodriguez stated that the pain started back around his should[er] and neck after an altercation with another inmate, 'I was in a headlock, after that my back and kind of my neck area started hurting, now my right side chest hurts; when I touch it the pain is there when I touch it, so I thought I [would] go see a doctor right now.'" *Id.* at 2-3. "Mr. Rodriguez denied nausea, vomiting, fever, sweats, or night chills." *Id.* at 3. Based on these and other observations, Defendant Singh ordered a follow-up visit "for r[igh]t side chest pain (no[t]] cardiac), muscle skeletal pain." *Id.*

According to the medical progress note authored by Defendant Singh at the time:

- "I/p states in Chest pain in the right side of chest. I/p states pain 6/10 pain, area tender to touch, soreness." ECF No. 84-14 at ECF p. 29.
- "Enroute I/p remained stable with Complain of pain 6/10 to right Chest." *Id.*
- "I/p states pain in right middle 'my back is hurting me when I lay down and chest when I press on it.'" *Id.* at ECF p. 30.

Moreover, Plaintiff gave the following testimony at his deposition:

- "I went man down to try to get medical attention."  ECF No. 88-6 at 83.
- "I told them there's something going on with my neck, that I couldn't feel my right hand." *Id.* at 85.
- "I told them the pain was getting so bad that it was hurting my chest." *Id.*
- "Told them I was having unbearable pain, chest pain." *Id.* at 87.
- "I told him, I go—I gave him the—basically what was going on with me, everything—all the symptoms I was having, as far as not being able to feel my right hand.  It told him that the pain was getting so bad that it was starting to hurt my chest. But I also told him, like that's –although my chest is hurting, I know there's something going on over here." *Id.*
- "I told them I was having bad pain in my neck and it was getting so bad it was hurting

12

my chest." *Id.* at 88.

- "I told him I was in a lot of pain. I know that I told him I was like over a ten in pain, and I know that if you look at the papers, he tried to put that I was a four or something like that." *Id.* at 93.

- "I told him it was months [since the pain started].  I told him I've been going through this since May." *Id.* at 94.

Construing all disputes of fact in favor of the non-moving party, the Court finds that a reasonable jury could find based on this evidence that Defendant Singh was deliberately indifferent to Plaintiff's serious medical needs by not referring Plaintiff to a doctor. By Defendants' own documents, Defendant Singh was required to refer Plaintiff to a physician if (1) he experienced extremity pain, along with alteration in sensation, or if (2) he experienced chest pain accompanied by pain spreading to shoulders or neck, pain in back between shoulder blades, or pain in the center of the chest lasting more than 15 minutes. The evidence cited above shows that there is evidence that Defendant was aware that Plaintiff was experiencing extremity pain, alteration in sensation in his hands, and chest pain spreading to his shoulders and neck, and yet that Singh nevertheless failed to refer Plaintiff to a physician.

Indeed, Defendants appear to concede that Plaintiff complained of symptoms warranting referral to a physician. Again, Defendants argue that Plaintiff "did not exhibit any symptoms consistent with chest pain, *aside from his subjective statements*." ECF No. 93 at 7 (emphasis added). Thus, even Defendants appear to acknowledge that Plaintiff told Defendant Singh that he was experiencing symptoms of chest pain that warranted referral to a physician. But there is no evidence to support Defendants' suggestion that Defendant Singh was permitted to ignore Plaintiff's subjective statements of his own symptoms. There is also nothing in the protocols and procedures requiring a nurse to objectively verify chest pain, or any other pain, before referring an inmate to a physician. Rather, when Plaintiff's own description of his symptoms is considered, there is sufficient evidence that Plaintiff was suffering symptoms that warranted a physician referral.

Defendants' motion for summary judgment also repeatedly mentions that Defendant Singh consulted with a doctor, who apparently informed him that Plaintiff only needed ibuprofen

and a follow-up with another nurse. However, discussing Plaintiff's situation with a doctor is not the same as referring Plaintiff to see a doctor. Indeed, Defendants' own protocols, cited above, concern when a nurse should refer someone to see a physician—not when a nurse should consult with a physician. Moreover, Defendants do not present any evidence as to what Defendant Singh told the doctor, such as whether Defendant Singh told the doctor that Plaintiff was experiencing extreme pain, numbness in his hands, chest pain combined with shoulder pain, or other indications that Plaintiff was experiencing an emergent situation. Thus, while Defendant Singh's decision to talk to a doctor might be relevant to a jury's assessment of Defendant Singh's state of mind, it alone does not warrant summary judgment on behalf of Defendant Singh.

Defendants also ask the Court to completely disregard Plaintiff's deposition testimony because it is self-serving. ECF No. 93 at 8. However, as even Defendants concede, a Court may only disregard self-serving testimony where "it states only conclusions and not facts that would be admissible evidence." *Id.* at 9, citing *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017). Plaintiff's deposition testimony, given under oath, is not conclusory. It is admissible evidence concerning what Plaintiff felt, observed, and told Defendant Singh. The Court cannot disregard such testimony solely because it supports Plaintiff's case.

Defendants also repeatedly suggest that Defendant Singh's conduct was reasonable because Plaintiff failed to disclose his intravenous drug use. ECF No. 84-1 at 18. However, there is nothing in the practices and protocols above that refer to the reason for an inmates' symptoms or warrant declining to refer an inmate to a physician if the inmate's description of how he was injured changes.  Again, Plaintiff's claim against Defendant Singh is based on a failure to refer Plaintiff to a physician—not that Singh failed to diagnose the ultimate cause of the symptoms. Moreover, there is nothing in Defendant Singh's own declaration that suggests that Defendant Singh's decision was based on Plaintiff's account of how he was injured, or that Defendant Singh would have made a different decision if he was aware of Plaintiff's drug use. Thus, no evidence supports Defendants' argument that Singh is entitled to summary judgment on the ground that Plaintiff failed to disclosure his intravenous drug use or presented differing accounts of how his symptoms started.

Defendants also argue that there is no evidence of deliberate indifference because

Defendant Singh performed many medical tests and referred Plaintiff to an appointment with another nurse the following day. However, those actions do not change the fact that Defendant Singh failed to refer Plaintiff to a physician. Indeed, Defendant Singh's own tests and decisions based on those tests support Plaintiff's argument that Defendant Singh was improperly, and inaccurately, trying to diagnose Plaintiff's illness himself rather than sending Plaintiff to a doctor.

Additionally, Plaintiff has presented some evidence that Defendant Singh purposefully disregarded Plaintiff's symptoms, including by repeatedly recording Plaintiff's pain as a 6/10 despite Plaintiff's own account of telling Defendant Singh he was in extreme pain. Further, Plaintiff has submitted his own testimony that Defendant Singh did not take his condition seriously because, "it was the Fourth of July, and you could tell he's wanting me to get out of there, like he was smirking." ECF No. 88-6 at 104.

Accordingly, the Court recommends denying summary judgment as to Plaintiff's claim of deliberate indifference to serious medical needs against Defendant Singh because, construing disputes of fact in favor of the Plaintiff, a reasonable jury could find that Defendant Singh was deliberately indifferent to Plaintiff's serious medical needs by failing to refer Plaintiff to a physician.

### D. Defendant Aflague

As with Defendant Singh, Defendants argue that Defendant Aflague was not deliberately indifferent because his actions were objectively reasonable under the circumstances, and he did not possess the requisite mental state for deliberate indifference. ECF No. 84-1 at 21-24. Defendants again rely heavily on their expert evidence regarding the rarity of epidural abscesses, Plaintiff's lack of presenting with the "classic triad of symptoms," and Plaintiff's failure to disclose his intravenous drug use. *Id.* at 21-22. Defendants argue that Plaintiff presented no signs or symptoms suggesting to Defendant Aflague that he was suffering from an epidural abscess or other infection, and it was therefore appropriate to routinely refer him for what he thought was musculoskeletal in nature.

Plaintiff's Opposition argues that, despite knowing of Plaintiff's serious complaints of pain, Defendant Aflague provided no treatment and unilaterally decided to refer Plaintiff to a doctor within 14 days. As with Defendant Singh, Plaintiff further argues that Defendant Aflague

improperly diagnosed his condition in violation of the California Nursing Practices Act, and that there were no standardized procedures mandating the circumstances under which a referral to a physician would be made. Further, Plaintiff states that Defendant Aflague's testimony makes it clear that "it is within a nurse's total discretion as to when an inmate is to be referred." ECF No. 88 at 18.

In reply, Defendants argue that Plaintiff cannot bring a claim under the California Nursing Practices Act for the first time in his Opposition. They further argue that "Defendant Aflague's own examination of Plaintiff revealed no objectively-verifiable symptoms that, consistent with the RN protocols, required an immediate referral to a doctor." ECF No. 93 at 10.

Thus, as it did for Defendant Singh, the Court again looks to the evidence presented by the parties regarding when Defendant Aflague was supposed to send Plaintiff to a physician on an emergency basis and compares that with the evidence regarding what Defendant Aflague learned during his medical examination of Plaintiff.

According to Defendants' submitted evidence regarding the procedures and protocols for musculoskeletal complaints, RNs should refer patient to a physician if the following conditions are present:

- "Extremity pain or stiffness: If alteration in circulation or sensation, new deformity or discoloration, or patient appears ill or has history of fever, chills, headache, nausea, vomiting, or diarrhea, notify physician STAT." ECF No. 93-2 at ECF p. 5.

- "Acute low back pain: Refer patient to physician on a STAT, Urgent, or Routine basis as appropriate." ECF No. 93-2 at ECF p. 6.

The Court next compares these procedures with the evidence regarding Plaintiff's symptoms at the time he was examined by Defendant Aflague to determine if Plaintiff has produced evidence that he presented with these symptoms.

Defendant Aflague's declaration describes the following symptoms and observations of Plaintiff during their encounter:

- Mr. Rodriguez stated that pain radiated down the back of his neck to his upper back and that he had numbness, tingling, and weakness to his right upper

extremity and weakness gripping with his right hand;

- During physical examination, I noted that Mr. Rodriguez had difficulty with his range of motion turning his head to the right side and tilting his head forward and backward, but appreciated no weakness with his right hand and noted that he had equal strength to his bilateral upper extremities;

- Mr. Rodriguez complained of no issues to his lower extremities and I noted that he ambulated with a steady gait

- Mr. Rodriguez denied any cough, fever, chest pain, shortness of breath, nausea, vomiting, diarrhea, or constipation;

- Mr. Rodriguez was without fever and his temperature was 96.7 degrees Fahrenheit;

ECF No. 84-5 at 2-3 (internal citations omitted). Additionally, Defendant Aflague's progress note in the medical record further stated:

- "IP stated 9/10 to upper back, and neck pain." ECF No. 84-14 at ECF p. 28.

- "IP has difficulty with range of motion in turning his head to the right side. Tilting his head forward, and especially backward. He stated that pain radiates down the back of his neck to his upper back. He also stated numbness, tingling, and weakness to his upper right extremity. Stating weakness with gripping on his right hand. No weakness was noted during my examination. He had equal strength to his bilateral upper extremities . . . He was informed though that nerves can cause the symptoms of numbness, tingling, and weakness to radiate down his right arm. However, he will require further evaluation to determine treatment by the physician." *Id.* at ECF pp. 28-29.

Defendant Aflague also testified during his deposition (ECF No. 88-9) follows:

- Plaintiff "had pain to his upper back and neck pain that was 9 out of 10, and that he had radiating pain." *Id.* at 50.

- "[Plaintiff] stated that he had a physical injury which resulted in his neck pain and upper back pain. And then now, he was also stating to me that he had numbness and tingling coming down into his right arm." *Id.*

17

- "When he stated nine out of ten, I thought that he was in a lot of pain, yes." *Id.* at 51-52.

Furthermore, Plaintiff testified during his deposition that he told Defendant Aflague the following:

- "I had told them – I seen them and I have them the rundown – well, I told them everything that had happened to me and why I was there, and that I was having really, really bad pain and it got worse after I had altercation and I couldn't feel my right hand. It was – they told me it was a pinched nerve and sent me home." ECF No. 88-6 at 107.

- "I told them that this started in May – like it had been a couple months, a few months that I was experiencing this. And I told them how it was getting worse and how they were just delaying, like kept giving medical appointments and they weren't doing nothing for me but giving me ibuprofen." *Id.* at 108.

- "I told [Defendant Aflague] that [the neck pain] started getting worse." *Id.*

Construing all disputes of fact in favor of the non-moving party, a reasonable jury could find that Defendant Aflague was aware of symptoms that warranted referring Plaintiff to a doctor on an emergency basis. Again, according to relevant protocols, Defendant Aflague was supposed to refer Plaintiff to a physician on an emergency basis if Plaintiff had signs of "[e]xtremity pain or stiffness," including "alteration in circulation or sensation, new deformity or discoloration, or patient appears ill or has history of fever, chills, headache, nausea, vomiting, or diarrhea." ECF No. 93-2 at ECF p. 5 ("notify physician STAT"). Here, Plaintiff has presented evidence that he showed symptoms of extreme pain in his back and upper neck, numbness, tingling, and weakness to his right upper extremity and weakness gripping with his right hand, which would indicate alteration in sensation. Thus, construing disputed facts in favor of Plaintiff, Defendant Aflague was required to refer Plaintiff to a doctor on an emergency basis yet failed to do so.

As they did with Defendant Singh, Defendants argue that Defendant Aflague also lacked the requisite mental state required for deliberate indifference because he went above and beyond by testing Plaintiff's grip strength, educating him about cervical strains, and conducting a "thorough physical examination." ECF No. 84-1 at 23. But again, Plaintiff's complaint is that

Defendant Aflague failed to refer him to a physician on a more urgent basis. While Defendant Aflague's various testing may be relevant to a jury determining his state of mind, it does not alleviate Defendant's Aflague's requirement to refer Plaintiff to a doctor more urgently. Indeed, Defendant Aflague's decision to do testing and provide Plaintiff wish his assessment of Plaintiff's symptoms suggests that Defendant Aflague improperly attempted to diagnose Plaintiff's condition himself, rather than assess whether Plaintiff had symptoms that warranted an urgent referral to a doctor.

As they did regarding Defendant Singh, Defendants also argue that Plaintiff gave contrary accounts of how he was injured and did not disclose his intravenous drug use to Aflague. However, again, the protocols for referral to a physician say nothing about the cause of the supposed injury, or permit nurses to withhold a referral to a physician based on differing accounts of the injury.  Plaintiff's failure to disclose his drug use does not alter the symptoms he presented to Aflague or whether those symptoms warrant an urgent physician referral.

Accordingly, the Court recommends denying summary judgment as to Defendant Aflague because, construing disputes of fact in favor of the Plaintiff, the non-moving party, a reasonable jury could find that Defendant Aflague was deliberately indifferent to Plaintiff's serious medical needs by failing to refer Plaintiff to a physician on an urgent basis.

### E.  Qualified Immunity

Finally, Defendants argue that they are entitled to qualified immunity because "[g]iven the extreme rarity of spinal epidural abscesses and the tremendous difficulty in diagnosing the same, coupled with Rodriguez's symptoms, or lack thereof (e.g., fever), and report of onset following working out or being placed in a headlock, it would not have been clear to a reasonable medical provider that Rodriguez was suffering from a spinal epidural abscess." ECF No. 84-1 at 29. However, Plaintiff's claim is not that Defendants failed to diagnose him with an epidural abscess. Rather, Plaintiff claims that they were required to refer him to a doctor for further diagnosis and treatment, or, in Defendant Aflague's case, to refer him more urgently. Defendants make no argument that their decision to diagnose Plaintiff themselves, and fail to refer Plaintiff to a physician on an urgent basis, was entitled to qualified immunity. And it is well-settled that delaying an inmate's access to medical care may constitute deliberate indifference to serious

medical needs. *See, e.g.*, *Estelle*, 429 U.S. at 104–05 ("We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs *or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed*.") (internal citations and footnotes omitted, emphasis added); *Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002) (the law was clearly established that officers cannot intentionally deny or delay access to medical care); *Hunt v. Dental Dept.*, 865 F.2d 198, 200-01 (9th Cir. 1989) (plaintiff alleged sufficient facts from which it could reasonably be concluded that prison officials knew of dental condition but denied request for prompt treatment).

Accordingly, the Court recommends denying summary judgment on this basis as well.

## V.      CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, IT IS RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 84) be granted, in part, and denied, in part, as follows:

    a.  Defendants be **GRANTED** summary judgment as to Plaintiff's deliberate indifference claim against Defendant Vitto.

    b.  Defendants be **DENIED** summary judgment as to Plaintiff's deliberate indifference claims against Defendants Singh and Aflague.

2. The case proceed only on Plaintiff's claim that Defendants Singh and Aflague were deliberately indifferent to Plaintiff's serious medical needs.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The objections shall not exceed more than fifteen (15) pages, including exhibits. Any reply to the objections shall be served and filed within thirty (30) days after service of the objections.

\\\

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **October 11, 2024**                    /s/ *Erica P. Grosjean*
                                                 UNITED STATES MAGISTRATE JUDGE

21